I'm Rebecca Kofel, I represent Leonard Greger. Can you keep your voice up a little bit? I will do my best. Okay, that's better. I'm going to reserve a minute and a half for rebuttal. How long? A minute and a half. Okay, thank you. 30 seconds. Go ahead. Leonard Greger filed for disability. There was a limited period of time in which he had the ability to prove that he was disabled. His alleged onset date was June of 1998. His date last insured was December 31st of 1998. So he had to establish that he was disabled during that time frame. Mr. Greger is not an individual who can file a new claim for disability because he received veterans' benefits for service-connected disability. This allows him to receive Social Security disability insurance. Can you tell me how that occurred, the shell shock? How did that occur? The PTSD is service-connected. I'm assuming it has to be. I don't know. I understand. But you don't know how it happened? It's service-connected. Therefore, one assumes with his age he's a Vietnam veteran, and then it occurred in service. But it wasn't questioned in the hearing, and I don't know how it occurred, Your Honor. That's the PTSD. The other part of it was a stomach problem, and that occurred in the course of You've got a very appealing argument when you have a veteran who is now getting veterans' administration for being shell shocked. That's the kind of argument that lawyers normally would really seize upon and take it to its ultimate. One would hope it would. Unfortunately, I did not represent Mr. Greger. Well, I'm not criticizing you. I'm just making a statement about lawyering. Well, I would tell Your Honor that I have pursued it vigorously, and in this case, I am pursuing it here because I think it is important. I think it's very important that you have an individual who has been found in August of 1998 to be 30 percent disabled by the Veterans Administration because of PTSD. I think maybe that kind of dovetails into you have three issues that are presented to this court for the first time on appeal. Yes, I do. And obviously in Volcker, we established a narrow set of exceptions. I mean, the general rule is obviously you cannot bring up something for the first time on appeal, and I'm sure that you're aware of that. What is, you know, what exception do these three issues fall under? Your Honor, I think it falls under the exception that they are basically legal issues, that they are certainly it's inequitable and it's unconscionable and a manifest injustice, basically, not to address or allow Mr. Greger to address these issues before the Court, granting that he had certainly the opportunity at his administrative hearing to address some of them. The judge didn't address them. The judge has a duty to address them. He had the opportunity through counsel at the district court level. Unfortunately, for reasons I'm not clear on, that counsel did not address these issues. Certainly, the issue of the great weight that is required to be given. Well, I guess that I could make the devil's advocate argument that that would cut them, and you don't, than to raise them for the first time on appeal. That's obviously something that, you know, is frowned upon, because they aren't developed in the record in the way that they would be if, and people don't have an opportunity to respond, and... And unfortunately, that's why I'm requesting that it be remanded so the record can be developed as to those issues. Mr. Greger has a ninth-grade education. He relied on legal counsel at the hearing and at a different counsel at the district court level. Neither of those attorneys, again, I have no idea why, raised these issues. Should they have? Absolutely. Should Mr. Greger lose his substantial interest in receiving Social Security disability benefits because the counsels he had, the counsels he retained, failed to raise these issues when they, he is limited to this very short period of time in which to prove his disability. I do not think so, and I don't think this Court will think so. And, counsel, if, but if we do think so, if we do think that the issue not raised below is waived, doesn't that foreclose any claim that he has, that part of his disability that is severe is psychological and limits him to the claimed physical disability? It would, Your Honor, if you decide that those issues are waived. I'm limited to the three other issues that I raised, which were the, his issue of credibility, his issue of whether there was, the issue of whether there was a complete hypothetical presented to the vocational expert, which I would argue there was not because it did not include any of the effects of the Atenolol, Mr. Greger's prescription medication that he was taking, that the medical expert himself said could cause fatigue, and that could be a basis for additional disability for his requirement of a couple of naps a day. That isn't addressed, but that was raised below, and that, those are certainly issues that this Court could remand on alone. I think more important is the failure of the administrative law judge to consider the weight that needs to be given to the, excuse me, the VA's decision to find Mr. Greger, 30 percent disabled due to PTSD. They found that in August of 1998. In the time frame we're talking about, that decision came down. He was already disabled, asked at 20 percent for the stomach. The administrative law judge failed, ignored, basically just pushed it aside and did not address the PTSD, found it a non-severe mental impairment, ignoring the de minimis requirement for severe, ignoring the requirement of McCarty that great weight be given to the VA's, too many V's, the VA's decisions. That is the other issue. Certainly, this Court can find that those issues are waived and we won't address them, and then I would argue, please remand on the basis of the failure to find Mr. Greger credible or the failure to fully and fairly present a complete hypothetical to the VE at the hearing. That was not done. The fatigue factor was not included in the hypothetical, either in the original hypothetical, which was basically to a partial limitation on light work, finding if there were some jobs available. The ALGO certainly then could have added to that and said what about if this person has to take one nap a day or two naps a day, is this work still available? He didn't do that. Well, I'm confused about when you're saying to remand on the credibility, because if there's an adverse credibility, then aren't we just reviewing whether it's adequately supported in the record? What's the standard of review on that? I mean, we don't get to decide it in the first instance here. We have to look at what was done and whether what was done is supported by the evidence that was presented, right? And I think that's the weakest argument I have, Your Honor, is the credibility. I think that there is a basis to find Mr. Greger not credible. That is just one of the arguments that was raised below. Okay. But I think the other arguments that were raised below, particularly with the complete hypothetical. What do you consider your strongest argument? I consider my strongest argument the hypothetical to the VE that did not include the side effects of the medication that Mr. Greger is taking, was taking at the time of both of the hearing and at the period of time in 1998 that he needs to establish disability. You want to save the balance for your rebuttal? Please, if I could. Thank you. Good morning, Your Honor. Frank Goveccia for the dependent appellee. Joanne B. Barnhart, the Commissioner of Social Security. Your Honor, what this case is about is Let me ask you a hypothetical. Okay. Suppose this applicant was 100 percent shell-shocked. Veterans Administration says that he can't work, can't do anything. Would he then be entitled to Social Security benefits, in this case? Well, actually, first of all, we don't have any evidence that that's the case. But in terms of a hypothetical, the VA and the way the VA rates disability My question has to do with double recovery. Pardon me? My question has to do with double recovery. Okay. He's getting 100 percent disability from the Veterans Administration. Is he also entitled to get disability from the Social Security Administration? Well, they would have to look at the circumstances involved. Let's assume that he's 100 percent disabled under both tests. I believe he would be. Would he be entitled to a double recovery under Social Security and Veterans Administration? That's my simple question. I don't know if he's You don't want to get yourself into trouble by answering it. I don't know if he's entitled to 100 percent recovery. However, there may be some offset because of his 100 percent disability rating by the VA, if that was the case. Okay. Okay. So what this case is about, Your Honors, is about a claimant who has been found not credible. In fact, Mrs. Cothall even stated that her credibility argument is a weak argument and that there is basis to find him not credible. It's also about a very short time period in which he must demonstrate that he was disabled from his alleged onset date of June 25, 1998, through his date last insured, December 31, 1998. Now, the ALJ has looked at the Step 2 issue in this case that was not brought up below. And I'd first like to say that there's a longstanding rule, as I'm sure you are all aware, in this court laid out in Edlund, laid out in Matinee v. The Commissioner, and the other cases that I had cited within my brief that are clear on the issue, issues not brought below before the district court shouldn't be considered at the Ninth Circuit. And there's a number of reasons the court made that rule, and I think one of them being judicial efficiency. Well, we've heard of that. But Volker does establish a narrow set of exceptions, and that's what I asked the appellant. You know, how does this fall within the exceptions? And do you want to respond to basically what she said? I mean, I think that the ‑‑ I think that there's three things that you ‑‑ possible exceptions. And first, to prevent a miscarriage of justice. Second, an intervening change in the law. And third, when an issue is purely one of law. Right. And it's our position that none of those exceptions have been met in this case. These issues is certainly not a pure question of law. I believe the case of Sylveria involved an issue of pure question of law. It involved the grids and it involved the medical vocational guidelines. So if a claimant would be disabled under those grids, they would certainly be entitled to disability because they're either disabled under the grids or not disabled under the grids. So the commissioner in that case would not have been prejudiced because the individual would have been, per se, disabled and entitled to disability. That's not the case here. Well, I think she's arguing probably ‑‑ I think the miscarriage of justice is what she's saying. And I heard, you know, I'm trying to kind of focus that for you. And how ‑‑ what, you know, what is ‑‑ what's the best miscarriage of justice argument and what's your response to that? Well, there ‑‑ in this case, there is no miscarriage of justice because the ALJ did sufficiently evaluate the severe impairment, whether or not there was a severe impairment at step two. I think what we know about the rating is that it happened sometime, and there's a reference to it in a May 2000 report that he was 30% disabled. We don't know exactly when that happened. We know that Mr. Greger testified that this disability rating happened sometime in August of 1998. I wasn't quite understanding what the appellant was saying in terms of because of the 30% disability that he doesn't qualify for other things that he might ‑‑ that someone else would. I mean, I'm not ‑‑ I got the sense that there's just ‑‑ there's something particular to his situation because of the 30% disability that would disqualify him for other benefits that someone else might be able to qualify for. I also was a little confused as to that argument. However, I think what we need to look at, what's in the facts, what's in the records? What do we know about his alleged mental impairment at step two? And I think if you look at the record in its totality, we know that during the relevant time period under review, the pertinent time period, he was not assessed in any way with any mental limitations by any of his health care providers. He ‑‑ no health care provider had indicated that he was having any psychological problems. No health care provider during the relevant time period, in fact, stated that there was a need for any development of the mental impairments or for further limitations as a result to assess limitations as a result of a mental impairment. There's nothing in the record that demonstrates that. What we do also know is that during the relevant time period, he didn't seek any treatment for a mental impairment. He didn't go to his physicians and state that he was having problems in the area of a mental impairment. We know that he was referred to mental health counseling in May and July of 1998 during the relevant time period, but there's no evidence in the record that he actually followed through with that. We know that he had seen a treating psychiatrist on two occasions in 1997, before the relevant time period under review here. We know that he went to a counselor at the VA prior to his surgery, but never returned after his surgery. And I think the ALJ logically concluded from that that, you know, he was having a relatively good recovery period from his surgery, that he was reporting he was not experiencing fatigue. He was not experiencing shortness of breath. He was engaging in activities such as remodeling homes, doing construction. He was doing work under the table. He had reported this in his records, and this was all happening during the relevant time period. Now, how does this relate to, obviously, the appellant said her strongest argument was the hypothetical, that I think that the ALJ did not include his claim that the adenal produced the side effect of fatigue in the hypothetical. Right. Well, basically, it goes back to his credibility, whether or not his statements that he was experiencing significant fatigue during the relevant time period, and whether or not those statements are credible. And as this Court knows, the Court's holding in numerous cases, Fair versus Bowen, for example, that an ALJ can use a claimant's prior inconsistent statements in assessing their credibility. So he's saying that he had fatigue as a result of this, these impairments. Well, the ALJ referenced the fact that during the relevant time period, he denied shortness of breath. He denied fatigue. And those were in November of 1998, and again in the... So just so that I understand this, the fact that the ALJ did not include that in the hypothetical, what are we reviewing that for, substantial evidence, or what's the... Well, the ALJ has to assess, it's their duty as the ALJ to assess the credibility of the claim. Right. We discussed that, and so the ALJ found adverse credibility. Adverse credibility, and he provided clear and convincing reasons. I think you had asked earlier what the standard was, and the standard is providing clear and convincing reasons. He did that in this case. So the error that she claims not including that in the hypothetical, what standard of review do we assess that by? Well, there is no error that he didn't include that in the hypothetical to the vocational expert. There is no error. There's always, if there's no error, but there's still always a standard of review to decide whether there is error. What's the standard of review for that? Well, substantial evidence. The ALJ supported his decision with substantial evidence, and it's our submission that the ALJ did do that. And he supported his decision with substantial evidence. It was free of legal error. He reviewed the case, summarized all the evidence, made rulings based on, and findings based upon the evidence, and this court in sample versus the commissioner has stated that an ALJ can logically deduce from the record and make logical assumptions based on that. This court has also in Batson versus the commissioner stated that we should defer to the ALJ's rational interpretation of the evidence. Shell shock is a mental disability. And in this case, the disability is quite severe. So people who have mental disabilities maybe don't remember, maybe they can't tell the exact truth or the whole truth or nothing but the truth. So their failure to explain everything carefully what happened to them physically is not a result of deliberate falsehood, but regularly is a result of mental disability caused by shell shock. And in this case, the ALJ completely ignored that fact of life. And what are we supposed to do? Well, I submit that the ALJ did not ignore the mental impairment. He assessed it by the totality. He said everything he says is a lie. He didn't take into account the mental disability caused by shell shock. We sell veterans to go to war, then we treat them like trash? Well, I believe that the ALJ looked at the totality of the evidence and made conclusions and findings based on substantial evidence within the record. And I believe his evidence or his findings were supported by substantial evidence and free of legal error. And we ask this Court uphold the decision of the District Court and affirm the decision of the Commissioner finding Mr. Greger was not disabled, pursuant to the definition of the Social Security Act. I see that my time has run over. Thank you for your argument. Thank you. First, let me clarify. You're right. Let me clarify for Judge Ferguson. As long as the VA disability or rating or receipt of benefits is service-connected, then the person can double-dip, if you will, VA benefits. That, to my knowledge, is the only area at the present time in which somebody can, if you will, double-dip with Social Security. Let me also clarify, if I might, that, Judge Callahan, your question regarding other benefits, were claimant eligible for SSI, he would be able to refile his claim and start a new period. He is not eligible for SSI because he receives VA benefits. SSI is means-tested and counts the VA benefits as income, and therefore, he would not be able to receive SSI. And that would be the other benefits he would not be eligible for. It has nothing to do with 30 percent. I apologize if I misled the Court. I would ask this Court, under these facts, with the ALJ essentially ignoring the fact that claimant's mental disability, his severe PTSD that is ‑‑ Can I ask you a question? Sure. About what the record reflects. Does the record reflect, other than through the claimant's testimony, when the VA rated him as impaired from PTSD? I believe it does, Your Honor. I cannot cite the place it does, but I would look in the VA records. He was ‑‑ he said he was rated disabled. I know what he said. I know. And then in ‑‑ Closing counsel said that the record, the only record of the VA was from the summer of 2000. 2000. He had made another application to increase his benefits. It was increased at that time. That is the point at which they did some more testing, and that is also in the record. I think if the Court looks at that record, it will find that he was awarded VA benefits in August of ‑‑ starting in August of 1998 for PTSD. Thank you. Thank you. Thank you. Thank you both for your argument. This matter will now stand submitted.
judges: Ferguson, Callahan, Bolton